IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES RAY SMITH,

     Petitioner,                         No. CIV S-09-2967 MCE GHH P

    vs.

M. MCDONALD,                       ORDER &
                                                FINDINGS AND RECOMMENDATIONS

     Respondent.

_____/

I. Introduction

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2008 conviction for numerous sexual offenses committed against several victims. The trial court sentenced petitioner to a determinate term of twenty-five years to life and an indeterminate term of fifty-five years to life. This action is proceeding on the original petition filed October 23, 2009, raising the following claims: 1) ineffective assistance of counsel; 2) improper venue; and 3) prosecutorial and judicial misconduct.

        After carefully considering the record, the court recommends that all the claims in the petition be denied, except for the ineffective assistance of counsel claim with respect to the competency hearing, as the court will appoint counsel solely for that claim, and make further

1

findings on the merits at a future date.

II. Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the

2

objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

"Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

III. Background

The opinion of the California court of appeal contains a factual summary that the

3

court adopts below.[1]

> A jury convicted [petitioner] of 14 out of 15 counts involving sexual offenses (and one count of burglary) against four different victims between June and November of 2004, one of whom was 13 years old. Five of the convictions involved an attack on a coworker at a park in Sacramento County; the remaining crimes took place in Placer County. The trial court sentenced him to state prison on all counts except the burglary, on which it stayed sentence.

People v. Smith, 2009 WL 1361040 at *1.

IV. Argument & Analysis

        Claim 1 - Ineffective Assistance of Counsel

Petitioner contends that trial counsel was ineffective with respect to petitioner's competency hearing and several other matters.

        Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id., 104 S. Ct. at 2064.

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687, 104 S. Ct. at 2064. The defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688, 104 S. Ct. at 2064. The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. Babbitt v. Calderon, 151

---

[1] The court of appeal only set forth a brief summary as the underlying facts of the conviction were not relevant to the issues on appeal. Likewise, the undersigned need not set forth a complete recitation of the facts to review the instant petition.

4

F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. The reasonableness of counsel's decisions may be assessed according to professional norms prevailing at the time of trial. Silva v. Woodford, 279 F.3d 825, 846 (9th Cir. 2002).

Second, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687 104 S. Ct. at 2064. The test for prejudice is not outcome-determinative, i.e., defendant need not show that the deficient conduct more likely than not altered the outcome of the case; however, a simple showing that the defense was impaired is also not sufficient. Id. at 693, 104 S. Ct. at 2067-68. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome. Id., 466 U.S. at 694, 104 S. Ct. at 2068.

Discussion

Petitioner states in the instant petition that:

> No witnesses were subpoenaed in my defense, nor (live video) from Gibson Ranch to prove Rebecca B is perjuring herself, police reports not admitted in trial as evidence, no DNA tests by defense to prove my innocence my speedy trial rights were violated, competency hearing was denied in my defense by an unqualified counsel incompetent and unlawfully practicing law. Jury was all white people.

Petition, Claim 1.

However, the only claim that was raised in state court relates to petitioner's competency hearing. Respondent raised the issues of exhaustion in the answer yet also argued that the claims should all be dismissed on the merits, arguing they were frivolous. Petitioner chose not to file a traverse. The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). However, a petition

5

may be denied on the merits without exhaustion of state court remedies. 28 U.S.C. § 2254(b)(2).

Other than the paragraph quoted above, petitioner sets forth no arguments or case law in support of these claims. As petitioner did not raise these claims in state court, the undersigned is unable to understand plaintiff's arguments. Simply saying police reports or witnesses should have been obtained without identifying the witnesses or police reports or what the evidence would have demonstrated is insufficient. Petitioner's claims are vague and conclusory and should be denied on the merits on that basis. See Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).

The competency claim was brought on direct appeal and denied in a reasoned opinion by the court of appeal.

> A. Background
> [Petitioner] retained the services of a firm known as Criminal Defense Associates, which apparently consisted of lawyers from cities throughout California. At various times, different attorneys from the firm appeared for [petitioner], based in offices in Woodland Hills, Santa Cruz, and Sebastopol. Before the scheduled hearing for trial assignment on May 18, 2007, Attorney Marie Alex filed a motion to suspend the proceedings to assess [petitioner's] competence to stand trial, and expressed her doubts to Judge Gaddis when she appeared in court. Judge Gaddis suspended the proceedings and referred [petitioner] to a psychologist for evaluation, and set the matter for hearing on June 29.
>
> After meeting with [petitioner], the psychologist filed his evaluation with the court on June 22. He found that, though significantly depressed, [petitioner] was competent to stand trial.
>
> On the day before the June 29 hearing, Attorney Alex filed a notice that her law firm had gone bankrupt a week earlier and she could not continue to represent [petitioner] on her own because she had accepted employment with a public defender's office. She requested the court either to appoint the Placer County public defender or contact the Sebastopol attorney, Kristine Burk, who had represented [petitioner] at the preliminary hearing. Attorney Burk had expressed the willingness to take responsibility for [petitioner's] case.
>
> When the court (Judge Couzens presiding, according to the minutes) called the case on June 29, a "Ms. Davidson" (who is not further identified in the reporter's or clerk's transcript) stated, "I will make a special appearance. I overheard a conversation earlier." The court discussed the information in the notice from Attorney Alex, and determined that [petitioner] had not yet heard from any attorney from the now-defunct firm; it told [petitioner], "The most important thing

6

is that you are represented by counsel. The attorney that appeared here earlier this morning appeared on behalf of a member of the firm which is known as the Criminal Defense Associates." (There is nothing in the clerk's or reporter's transcript regarding this earlier appearance.) The court expressed its understanding that the parties were prepared to submit the matter of [petitioner's] competence on the psychologist's report. Ms. Davidson replied, "That was my understanding during the conferencing." The court found [petitioner] to be competent and reinstated proceedings. The court told [petitioner] that there would be a hearing in two weeks to set a trial date and make sure that he had counsel.

At the next hearing on July 13, [petitioner] confirmed that Attorney Burk would be resuming her representation of him. The court's clerk confirmed this in a phone call to counsel's office and determined that she could be present on July 26, when [petitioner] could decide whether to proceed with her or with the public defender. She thereafter represented [petitioner] pro bono.

B. Analysis
Based on the skeletal nature of the record, [petitioner] asserts that it does not affirmatively demonstrate that Ms. Davidson was even an attorney, let alone one familiar enough with the facts of the case to make the decision to submit the matter of his competence to stand trial on the psychological evaluation. He contends that this establishes the deprivation of his right to counsel at the competency hearing. The problem with his argument is that it stands basic appellate principles on their heads.

A judgment is presumed correct, and therefore where the record is silent we assume matters were done properly absent affirmative evidence to the contrary, which is an appellant's burden to provide. (Maria P. v. Riles (1987) 43 Cal.3d 1281, 1295-1296, 240 Cal.Rptr. 872, 743 P.2d 932; Denham v. Superior Court (1970) 2 Cal.3d 557, 564, 86 Cal.Rptr. 65, 468 P.2d 193; Mountain Lion Coalition v. Fish & Game Com. (1989) 214 Cal.App.3d 1043, 1051, fn. 9, 263 Cal.Rptr. 104; Evid.Code, § 664.) Among the things we presume is the competent performance of counsel's duties off-record. (Conservatorship of Mary K. (1991) 234 Cal.App.3d 265, 272, 285 Cal.Rptr. 618.)

There is no indication that appellate counsel ever sought to settle the record about the events of June 29 to support her suppositions. Rather, she has attempted to piece together the implausible (that a court would allow a lay person to make an appearance on behalf of [petitioner]), the unlikely (that an attorney would presume to appear on behalf of a criminal defendant and make a tactical decision with respect to a ruling on his competence without being aware that this was the intent of the attorney actually representing him), and the dubious (that the Sebastopol attorney, who was familiar with [petitioner] from the preliminary hearing, would let the matter proceed to trial without revisiting the issue of competency if she had any doubts on the subject), all to the end of creating a shroud of reversible error per se. The suppositions fail; we will not reverse a judgment based on mere conjecture. (People v. Ayala (2000) 24 Cal.4th 243, 267, 99 Cal.Rptr.2d 532, 6 P.3d 193 [will not reverse because of mere possibility that record is incomplete].) We therefore reject the argument.

People v. Smith, 2009 WL 1361040 at *1-2.

Despite a thorough review of the record, the undersigned does not have a clear understanding about what transpired on June 29, 2007.  For example, there are references to a conversation that occurred earlier in the day with unknown parties, that resulted in a decision to rest on the record for the competency hearing, however other than a brief mention of the 'conversation,' the record does not reflect what actually happened.  This seems of fundamental importance in understanding how certain decisions were reached.  The only clear information about the June 29, 2007, hearing is that someone, who was apparently representing petitioner, overheard a conversation and then rested on the record at the competency hearing with only what appears to be a less than probing psychological report.  See Confidential Diagnostic Report, Clerk's Augmented Transcript, Volume 1.  Therefore, counsel will be appointed solely for the ineffective assistance of counsel claim with respect to the competency hearing to aid in providing a more complete analysis and representation of what occurred.  See 18 U.S.C. § 3006A(a)(2)(B); see also Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).

The undersigned is not reaching any tentative conclusions on the merits of this claim, but rather is noting the lack of information regarding the claim.[2]  While the state court on direct appeal also noted the skeletal nature of the record, the undersigned is confronted with an ineffective assistance of counsel claim that requires information to be obtained from outside of the record.

Thus, the undersigned recommends that all of the ineffective assistance of counsel claims, except with respect to the competency hearing, should be denied.  The undersigned will issue further orders or findings regarding the competency hearing claim once counsel has been appointed.

\\\\\

---

[2] The undersigned notes that the trial transcript indicates that petitioner testified quite ably and well on direct and cross examination in his own defense, so to some extent he appeared competent.

### Claim 2 - Venue

Petitioner alleges that it was improper for the trial to occur in Placer County for the crimes that occurred in Sacramento county.

### Legal Standard

"The vicinage clause of the Sixth Amendment guarantees an accused 'the right to a ... jury of the ... district wherein the crime shall have been committed, which district shall have been previously ascertained by law.'"  Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004) (quoting U.S. Const. Amend. VI.), cert. denied 543 U.S. 1191, 125 S.Ct. 1408 (2005).  As part of the Bill of Rights, at the time of its adoption the Sixth Amendment applied only to the federal government and thus only to federal prosecutions.  Id.  Later, certain rights guaranteed by the Bill of Rights were extended to protect against state action by the Fourteenth Amendment Due Process Clause.  Id.  However, "[n]ot all of the rights guaranteed by the Sixth Amendment were incorporated; rather, only those rights that are 'fundamental to the American scheme of justice' or 'essential to a fair trial' apply to the states."  Id.  (quoting Duncan v. Louisiana, 391 U.S. 145, 148-49, 88 S.Ct. 1444 (1968)).

Neither the U.S. Supreme Court or the Ninth Circuit Court of Appeals have decided whether the Fourteenth Amendment incorporated the Sixth Amendment's vicinage right.  Stevenson, 384 F.3d at 1071.

In 1998 the California legislature enacted Penal Code § 784.7, which created an exception to the general rule of venue codified in § 777.  Section 784.7 created venue in any county in which one of several enumerated sex offenses occurred, if the defendant and the victim were the same in all of the charged offenses.  In 2002, the California Legislature revised § 784.7 to eliminate the requirement that the defendant and victim be the same, and added a provision for consolidation of charges from different counties, subject to a hearing pursuant to § 954 during which the prosecutor is required to present written agreement of the district attorneys of each county regarding venue.  See Cal. Penal Code § 784.7(a).

Discussion

Petitioner was tried in Placer County for crimes that occurred in Placer and Sacramento County. Liberally construing the instant petition, it appears that petitioner contends that his federal vicinage rights were violated and Cal. Penal § 784.7 was not properly followed. The court of appeal denied these claims with a reasoned opinion.

> The complaint alleged that jurisdiction over the Sacramento County offenses was proper pursuant to section 784.7. FN2. At the November 2005 preliminary hearing, the prosecutor submitted as an exhibit a letter from the Sacramento County District Attorney "regarding [the] special allegation regarding [section 784.7]." When asked if she had any objection, Attorney Burk said, "No objection for purposes of [the] preliminary hearing." The magistrate received the letter into evidence. ([Petitioner's] counsel did not raise the issue of venue in her argument. The magistrate held defendant to answer on the Sacramento County counts (counts eleven through fifteen).
>
> FN2. In pertinent part, section 784.7 provides, "When more than one violation of ... [various sexual crimes] occurs in more than one jurisdictional territory, the jurisdiction of any of those offenses ... is in any jurisdiction where at least one of the offenses occurred, subject to a hearing, pursuant to Section 954, within the jurisdiction of the proposed trial. At the Section 954 hearing, the prosecution shall present evidence in writing that all district attorneys ... agree to the venue." (§ 784.7, subd. (a).) (Emphasis added.) While phrased in terms of "jurisdiction," this is not jurisdiction in the fundamental sense (i.e., subject matter), but is instead simply venue. (People v. Sering (1991) 232 Cal.App.3d 677, 685, 283 Cal.Rptr. 507, overruled in part on a different ground in People v. Posey (2004) 32 Cal.4th 193, 205, fn. 5, 210, 8 Cal.Rptr.3d 551, 82 P.3d 755.)
>
> The court arraigned [petitioner] on all counts in the information (which again included the allegation invoking section 784.7) without any objection. In September 2006, [petitioner] moved to sever the allegations of the Sacramento County victim into a separate trial, invoking section 954 in claiming that weaker cases were joined with stronger cases. He also asserted in a single sentence that "trying counts involving incidents in various counties will be time[-]consuming, costly[,] and would undoubtedly confuse the issues for the jury." His motion to set aside the information, filed at the same time, did not raise the issue of jurisdiction over the Sacramento County offenses. At the September 12, 2006 hearing on the motion, [petitioner] did not make any further reference to the issue other than in an aside, questioning why Sacramento County did not prosecute the offenses against that victim if it was a strong case. The court denied the motions. [Petitioner] renewed the severance motion before trial without elaboration, and the court summarily denied it.
>
> At the conclusion of trial, the parties were discussing the exhibits. Attorney Burk wanted the Sacramento County assent letter to be marked as part of the record without its submission to the jury. The prosecutor noted there had not been any testimony about the letter: "[[Petitioner's] counsel] and I actually discussed this I

think even before the trial began.  And the jurisdictional issue is not a point of contention.  There is no disagreement.  I don't believe there has been any argument that we can't try [these] violation[s] because [they] happened in Sacramento County." [Petitioner's] counsel responded, "I don't think the jurors need it.  I think [the prosecutor] just wanted to make sure that it was part of the Court record to demonstrate that he had it and they presented it at [the] preliminary examination.  The issue was raised at that stage of [the] proceedings." The court retained the letter in its files without admitting it into evidence.

B. Section 784.7

Flying in the face of these facts, [petitioner] argues that the prosecution failed to satisfy the requirements of section 784.7.  He claims he has not forfeited the issue because it was the prosecution's burden to establish jurisdiction, and the prosecution never moved to consolidate the Sacramento County counts with the remainder.  He thereby distinguishes People v. Simon (2001) 25 Cal.4th 1082, 108 Cal.Rptr.2d 385, 25 P.3d 598, a case decided before the 2002 amendment of section 784.7 that added this obligation on the part of the People to make a section 954 motion.  Simon had held that a defendant's failure to raise an objection to venue prior to the commencement of trial forfeits the issue on appeal, because his plea of not guilty does not by itself impose any obligation on the prosecution to address venue.  (Simon, at pp. 1107-1108, 108 Cal.Rptr.2d 385, 25 P.3d 598.)

This is the proverbial distinction without a difference.  The principle in Simon is not dependent upon the particular default on the part of the People; rather, it is the need to give timely indication to the People that there is a flaw with the proof of proper venue with which defendant actually takes issue (rather than simply consenting to the venue).  In the present case, [petitioner's] counsel satisfied herself that the prosecutor had the proper assent from Sacramento County, and also invoked her right to seek severance of the Sacramento County counts on the ground that they occurred in another county.  Having received in fact all the protections that section 784.7 provides, [petitioner's] counsel then consented to trial without further objection to venue (as she acknowledged expressly at trial's close).  Appellate counsel cannot now resurrect this dead issue.  FN3

FN3. Since we reject [petitioner's] claim that he was deprived of a statutory right arbitrarily, we reject his claim that his trial violated his right to due process.

C. Vicinage

Price v. Superior Court (2001) 25 Cal.4th 1046, 108 Cal.Rptr.2d 409, 25 P.3d 618 held that the vicinage FN4 provision of the federal Constitution did not mandate a trial in the county where a crime took place, but in any event this was not among the provisions of the federal charter that are applicable to the states; therefore, section 784.7 does not violate the federal Constitution.  (Price, at pp. 1059, 1063, 1065, 1069, 108 Cal.Rptr.2d 409, 25 P.3d 618; see also id. at p. 1075 [§ 784.7 does not violate vicinage provision of Cal. Const.].)

FN4. "Vicinage" is the area from which a court draws its jury pool.  (People v. Guzman (1988) 45 Cal.3d 915, 934, 248 Cal.Rptr. 467, 755 P.2d 917, overruled in part on a different ground in Price v. Superior Court, supra, 25 Cal.4th at p. 1069, fn. 13, 108 Cal.Rptr.2d 409, 25 P.3d 618.)

> [Petitioner] argues that Price is not the last word on the reach of the vicinage provision of the federal Constitution. He then attempts to assert that section 784.7 violates his rights in this regard.
>
> The California Supreme Court's "independent constitutional obligation to interpret" federal law (In re Tyrell J. (1994) 8 Cal.4th 68, 79, 32 Cal.Rptr.2d 33, 876 P.2d 519, overruled on different grounds in In re Jaime P. (2006) 40 Cal.4th 128, 130, 51 Cal.Rptr.3d 430, 146 P.3d 965) is restricted only by a decision of the federal high court that directly decides the issue or "a premise from which it necessarily follows" (People v. Whitfield (1996) 46 Cal.App.4th 947, 957, 54 Cal.Rptr.2d 370); in the absence of any such paramount authority-the subordinate federal courts having only "persuasive" power-we must follow the rulings of the California Supreme Court (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937; see also In re Tyrell J., at p. 79, 32 Cal.Rptr.2d 33, 876 P.2d 519 [no controlling high court case]; Whitfield, at pp. 956-957, 54 Cal.Rptr.2d 370 [must follow a controlling "premise" contrary to state law]; People v. Dunn (1995) 40 Cal.App.4th 1039, 1050, 47 Cal.Rptr.2d 638 [no controlling high court case]; People v. Rooney (1985) 175 Cal.App.3d 634, 644, 221 Cal.Rptr. 49 [same] ). We therefore reject defendant's argument on the basis of Price.

People v. Smith, 2009 WL 1361040 at *2-4.

There is no clearly established Supreme Court authority that the vicinage clause applies to the states. Therefore, the California court of appeal's conclusion that there was a sufficient connection between the crimes with which petitioner was charged and Placer County so as to permit a trial by a Placer County jury is, therefore, not contrary to, or an unreasonable application of, clearly-established federal law. Stevenson, 384 F.3d at 1072; see also Olagues v. Brown, 2010 WL 3749422, at *5-6 (N.D.Cal. Sept. 23, 2010) (rejecting petitioner's federal habeas claim that the Vicinage Clause of the Sixth Amendment was violated in his state court prosecution). Accordingly, petitioner's claim should be denied.

Petitioner's claim that Cal. Penal Code § 784.7 was not properly followed must also be denied. Habeas corpus is unavailable for alleged error in the interpretation or application of state law. Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475 (1981); see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). The standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." Estelle v.

McGuire, 502 U.S. at 68, 112 S.Ct. at 480.

Regardless, a review of the record indicates that there was no violation of § 784.7, even if petitioner's counsel had made an objection to preserve this claim. Even assuming there was a violation of the statute, petitioner has failed to demonstrate, and a review of the record does not indicate, any error that was so egregious as to warrant habeas relief. This claim should also be denied.

### Claim 3 - Prosecutorial and Judicial Misconduct

Finally, petitioner raises many claims of misconduct by the prosecution and trial court. Regarding prosecutorial misconduct, petitioner states:

> Jeffrey Wood D.D.A. Intentional Suppression, concealment, and destruction of exculpatory evidence favorable to defense. Jury was all white people, no African Americans, Mexican Americans, Asian Americans - A racist jury unfair under U.S.C.A. 14.

Petition, Claim 3.

Regarding judicial misconduct, petitioner states:

> Mark Curry (Judge) violated my constitutional right to a fair trial. Forced Petitioner into a Kangaroo court. Judge failed to order lawful and competent competency hearing for Petitioner. There was no DNA evidence to legal prove any acts were performed!! Allowed a "Comitas Posse" vigilante to occur under U.S.C. title 18 1961-1968.

Petition, Claim 4.

These are the only statements in the petition regarding these claims. Petitioner provides no other arguments in support. Nor were these claims raised in state court, so the undersigned is again at a loss on how to analyze these claims without a proper background and explanation. Petitioner fails to identify what evidence the prosecution concealed or how the trial court erred by not ordering DNA tests. As noted above, a petition may be denied on the merits without exhaustion of state court remedies. 28 U.S.C. § 2254(b)(2). Petitioner's claims are again so vague and conclusory and should be denied on the merits on that basis. See Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by

a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).

Accordingly, IT IS HEREBY ORDERED that:

1. The Federal Defender is appointed to represent petitioner solely for the ineffective assistance of counsel claim with respect to the competency hearing to aid in providing a more complete analysis and representation of what occurred;

2. The Clerk of the Court is directed to serve a copy of the petition and this order on David Porter, Assistant Federal Defender.

3. Within twenty-eight days of this order, the parties shall file a joint scheduling statement which addresses the timing of the following matters:

   a. Discovery and investigations; and

   b. The need for and timing of an evidentiary hearing;

IT IS HEREBY RECOMMENDED that petitioner's remaining claims for writ of habeas corpus be denied.

If petitioner files objections, he shall also address if a certificate of appealability should issue and, if so, as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate of appealability must "indicate which specific issue or issues satisfy" the requirement. 28 U.S.C. § 2253(c)(3).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are

\\\\\

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: 01/04/2011

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

ggh:ab
smit2967.hc